[No. A128734. First Dist., Div. Five. Dec. 15, 2010.]

COUNTY OF SONOMA, Petitioner, v.
THE SUPERIOR COURT OF SONOMA COUNTY, Respondent;
MARVIN'S GARDENS COOPERATIVE, INC., et al., Real Parties in
Interest.

## COUNSEL

Steven M Woodside, County Counsel, and Anne L. Keck, Deputy County Counsel, for Petitioner.

Hanson Bridgett, Thomas B. Brown and Christopher B. Whitman for League of California Cities and California State Association of Counties as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Kumin Sommers, Matthew W. Kumin, Rory C. Quintana and Ramsey Hanafi for Real Parties in Interest.

## OPINION

**JONES, P. J.**—In 2007, the County of Sonoma (the County) enacted ordinance No. 5715 (the Ordinance) governing the zoning of medical cannabis dispensaries. One provision of the Ordinance required dispensaries to obtain permits to operate. In September 2009, real parties in interest Marvin's Gardens Cooperative, Inc., and Terry Worden (collectively, the Cooperative) opened a medical cannabis dispensary in the town of Guerneville. The County thereafter issued a stop order to the Cooperative because it had not obtained the required permit for its Guerneville location. The Cooperative closed the dispensary and then sued the County challenging the validity of the Ordinance.

The trial court ultimately sustained the Cooperative's challenge, holding that the Ordinance violated the Cooperative's right to equal protection of the laws. In two separate orders, the trial court invalidated the Ordinance and

issued a writ of mandate prohibiting the County from enforcing it. The County now seeks a writ of mandate compelling respondent superior court to vacate and set aside portions of those orders. Among other things, the County claims the Cooperative's action was untimely because it was not brought within 90 days of the Ordinance's enactment and is thus barred by Government Code section 65009, subdivision (c)(1)(B).[1] We agree with the County's limitations argument and will therefore direct the issuance of a peremptory writ of mandate.

FACTUAL AND PROCEDURAL BACKGROUND

This case comes to us after a rather complex procedural history in the superior court. We will therefore set out the facts in some detail.

*The County's Ordinance*

After passage of the Compassionate Use Act of 1996 (CUA; Health & Saf. Code, § 11362.5, added by voter initiative, Prop. 215, Gen. Elec. (Nov. 5, 1996)), groups of medical marijuana users opened medical marijuana dispensaries in the County.[2] Until April 2007, however, the County had no specific zoning regulations that addressed such dispensaries. Because the County's zoning code is drafted in a permissive fashion,[3] dispensaries could not lawfully operate in the unincorporated areas of the County, since they were not a specifically allowed or permitted use.

---

[1] All further undesignated statutory references are to the Government Code.

[2] The CUA is intended to ensure that seriously ill Californians have the right to obtain and use medicinal marijuana when recommended by a physician. (Health & Saf. Code, § 11362.5, subd. (b)(1)(A).) It encourages the state government "to implement a plan to provide for the safe and affordable distribution of marijuana to all patients in medical need of marijuana." (Health & Saf. Code, § 11362.5, subd. (b)(1)(C).) The Medical Marijuana Program Act (MMPA; Health & Saf. Code, §§ 11362.7–11362.9), enacted by the Legislature in response to the CUA, permits certain individuals such as qualified patients and persons with valid identification cards "collectively or cooperatively to cultivate marijuana for medical purposes" without being subjected to criminal penalties for doing so. (Health & Saf. Code, § 11362.775.) Neither the CUA nor the MMPA specifically authorizes the operation of storefront medical marijuana dispensaries. (*City of Claremont v. Kruse* (2009) 177 Cal.App.4th 1153, 1173, 1175 [100 Cal.Rptr.3d 1].) However, in accordance with the MMPA's directive (see Health & Saf. Code, § 11362.81, subd. (d)), the Attorney General has issued guidelines recognizing that while medical marijuana dispensaries "as such, are not recognized under the law," "a properly organized and operated collective or cooperative that dispenses medical marijuana through a storefront may be lawful under California law" provided it complies with the Attorney General's guidelines. The guidelines are available online at <http://ag.ca.gov/cms_attachments/press/pdfs/n1601_medicalmarijuanaguidelines.pdf> page 11 (as of Dec. 15, 2010).

[3] Under a "permissive" zoning code, "any use not enumerated in the code is presumptively prohibited." (*City of Corona v. Naulls* (2008) 166 Cal.App.4th 418, 425 [83 Cal.Rptr.3d 1].)

In May 2005, the County's board of supervisors adopted an urgency ordinance imposing a temporary moratorium on the establishment of new medical marijuana dispensaries. (See § 65858, subd. (a).) In May of the following year, the board of supervisors extended the temporary moratorium until May 2007. The stated purpose of the temporary moratorium was to permit the County "time to study and determine whether to authorize medical marijuana dispensaries as an allowed use within the unincorporated area of the county, and if so, to determine the appropriate zoning districts for such establishments, to adopt regulatory standards and conditions to be imposed on such establishments, and to adopt permit or licensing procedures and background procedures for such establishments."

Following adoption of the temporary moratorium, the County's planning commission held a public hearing on a proposed zoning change to allow medical marijuana dispensaries. On September 21, 2006, the planning commission reviewed and revised a draft ordinance governing medical cannabis dispensaries. The commission approved a resolution recommending that the County's board of supervisors adopt the proposed ordinance to amend the County's zoning code.

On January 30, 2007, the County's board of supervisors held a public hearing on the Ordinance. The board heard comments from the public and voted to adopt the Ordinance subject to certain changes. The board enacted the revised Ordinance on March 20, 2007, and it became effective 30 days later. As relevant here, the Ordinance defined the term "medical cannabis dispensary," made such dispensaries a permitted use within certain zoning districts, and set location and operational standards for dispensaries within the unincorporated County. The Ordinance also added Sonoma County Code section 26-88-126, subdivision (c), which states: "A use permit in compliance with Sections 26-92-070 and 26-92-080 shall be required for any medical cannabis dispensary."

*The Cooperative's Operations*

In late 2003, the Cooperative opened as an informal collective in the County, and it formally organized as a cooperative corporation in 2006. For many years, the Cooperative operated a dispensary in Rio Nido. It applied for a use permit for the Rio Nido location on February 4, 2008. During the pendency of the application, the County allowed the Cooperative to conduct its business. The County made no decision on this application for over a year,

and the Cooperative appears to have withdrawn it and requested a partial refund of its application fees.

In September 2009, the Cooperative relocated to a site in Guerneville. The area in which the Cooperative is now located is zoned for "limited commercial" uses, a designation that would allow operation of a medical cannabis dispensary upon receipt of a use permit. It is undisputed that the Cooperative has never applied for a use permit for its Guerneville location.

After it opened in Guerneville, the County received telephonic and written complaints from the public about the Cooperative. Field inspectors visited the new location, and on October 2, 2009, the County issued a "stop order" to the Cooperative. The stop order informed the Cooperative that a medical marijuana dispensary could not lawfully be operated at that location without a permit. The dispensary closed on or about October 7, 2009.

### The Cooperative's Action

The Cooperative sued the County on October 13, 2009, and filed an amended pleading the next day. The amended pleading was styled as both a petition and a complaint (the Petition/Complaint). It asserted seven causes of action and included requests for a writ of administrative mandate under Code of Civil Procedure section 1094.5, a writ of mandate under Code of Civil Procedure section 1085, a temporary restraining order (TRO), a preliminary and permanent injunction, and declaratory relief. The Petition/Complaint claimed the County's actions violated the equal protection clause of the California Constitution and various statutory provisions. It requested that the trial court issue a writ or TRO and a preliminary injunction requiring the County to withdraw its stop order and "to allow COOPERATIVE to operate within State law but without requiring it to apply for a special use permit." It also asked for injunctive relief to enjoin the County's zoning ordinance to the extent that it unfairly discriminated against the Cooperative. In addition, the Petition/Complaint sought a declaration that the Ordinance's requirement that the Cooperative "obtain a special use permit before operating as a medical cannabis cooperative in the County is void on its face and as applied."

In the legal memorandum filed in support of the Petition/Complaint, the Cooperative framed the issues presented by its litigation. It explained that it was seeking to have the court resolve "whether a requirement that state-sanctioned medical cannabis cooperatives must have a special use permit violates the equal protection clause of the California Constitution." Citing

*Cleburne v. Cleburne Living Center, Inc.* (1985) 473 U.S. 432 [87 L.Ed.2d 313, 105 S.Ct. 3249] (*Cleburne*), the Cooperative claimed the County had no rational basis for requiring medical cannabis cooperatives to obtain special use permits when it did not require drugstores to do so. It also argued that the Ordinance's permit requirement violated various state statutes because it discriminated against the members of the Cooperative on the basis of disability. Finally, the Cooperative asserted that the permit requirement and the stop order violated its members' constitutional right of assembly.

On the same day it filed its amended Petition/Complaint, the Cooperative also filed a notice and ex parte application seeking a writ of administrative mandamus or mandate, a TRO, a preliminary and permanent injunction, and declaratory relief. The notice informed the County the Cooperative would seek an order "restraining [the County] and [its] agents from enforcing that certain Stop Order, dated October 2, 2009, addressed to Plaintiff . . . ." The County opposed the application and argued the Cooperative was barred from raising a facial challenge to the Ordinance because it had not brought suit within the 90-day statute of limitations in section 65009, subdivision (c)(1)(B).[4] It also argued that the Cooperative had failed to exhaust its administrative remedies because it had not applied for a use permit or requested an administrative process to challenge the stop order.

At the hearing on the Cooperative's application, counsel for the Cooperative argued that section 65009 did not bar the action because the Cooperative brought suit less than two weeks after issuance of the stop order, which allegedly provided the first opportunity for the Cooperative to challenge the Ordinance. Under questioning from the court, however, counsel conceded that the Cooperative was limited to an as-applied challenge since the Ordinance had been enacted long before the Cooperative brought suit.[5]

The County's counsel contended the Cooperative's challenge was facial in nature and thus barred because it had not been brought within 90 days of the Ordinance's enactment. She also argued the Cooperative could not bring an as-applied challenge because it had failed to exhaust either of its two available administrative remedies. The Cooperative could either have applied

---

[4] With exceptions not relevant here, section 65009, subdivision (c)(1)(B) provides: "[N]o action or proceeding shall be maintained in any of the following cases by any person unless the action or proceeding is commenced and service is made on the legislative body within 90 days after the legislative body's decision: [¶] . . . [¶] (B) To attack, review, set aside, void, or annul the decision of a legislative body to adopt or amend a zoning ordinance."

[5] Counsel explained that "for the purposes of right here right now we'd concede that we are in some ways limited to [an as-applied argument], but even then there's a lot of questions that have to be answered as the statute's been applied." Counsel also agreed with the trial court's observation that the Cooperative was "restricted to" an as-applied challenge "given the time that's gone since the enactment of the [O]rdinance."

for a permit for its Guerneville location or followed the procedures in the Sonoma County Code for filing an appeal from the stop order and requesting an administrative hearing.

## The December 7, 2009 Order

The trial court issued a written decision on December 7, 2009 (the December 7 Order), in which it made three key rulings. It first found the Cooperative was making both facial and as-applied challenges to the Ordinance. Relying on *Travis v. County of Santa Cruz* (2004) 33 Cal.4th 757 [16 Cal.Rptr.3d 404, 94 P.3d 538] (*Travis*), it held the Cooperative's facial challenges to the Ordinance timely, because application of section 65009's 90-day statute of limitations "would be unfair to property owners who first experience the impact on their own property subsequent to the passage of 90 days." Second, the trial court concluded the Cooperative's failure to apply for a use permit for the Guerneville location "bars the prosecution of an 'as-applied' attack on the [O]rdinance." Third, the court sustained the Cooperative's facial challenge to the Ordinance because the County failed to "proffer[] evidence supporting [the County's] argument that there is a rational basis for the classification to further a legitimate government interest." The trial court reasoned that this "absence of any supporting documentation paralleled the insufficient showing criticized in *Cleburne, supra*, [473 U.S. 432]." It therefore invalidated the Ordinance, but it did not specify the type of relief it was granting in response to the Cooperative's application.

On December 17, the County filed a motion to reconsider the December 7 Order. It specifically sought reconsideration of the trial court's ruling on the statute of limitations.

## The Second Stop Order

On December 15, 2009, the County issued a second stop order to the Cooperative, because once the Ordinance was invalidated, there existed no law authorizing the operation of medical cannabis dispensaries. The Cooperative responded to the second stop order by filing an ex parte motion seeking either clarification of the December 7 Order or issuance of a TRO against the County. The Cooperative also filed a motion for leave to file a supplemental complaint. The proposed supplemental complaint alleged new facts regarding the County's issuance of the second stop order.

The trial court granted the Cooperative's request for a TRO on December 23, 2009, and it set both the County's motion to reconsider and the

Cooperative's motion for preliminary injunction for hearing. It also prohibited the County from enforcing its second stop order and directed the County to permit the Cooperative to continue its operations pending the hearing.

At the hearing, County Counsel asked the trial court to clarify what relief it had intended to grant in its December 7 Order, since that order did not indicate whether the court intended to issue a preliminary injunction, a writ of mandate, or both. The trial court indicated that it was unsure of the effect of the December 7 Order and directed the parties to submit briefs on that question.

*The April 13 Order*

After further argument from the parties, the trial court issued an "Order After Hearing on Respondent's Motion for Reconsideration" on April 13, 2010 (the April 13 Order). Although it found the County was not entitled to reconsideration, it acknowledged that its original ruling "was less than entirely clear and did not accurately reflect the full decision." It explained that it was "thus modifying the order with respect to the specific language and orders but only to more accurately and completely reflect the court's decision and the issues decided."

On the limitations issue, the court explained that the applicable limitations period was provided by section 65009, subdivision (c)(1)(E), which concerns actions brought "[t]o attack, review, set aside, void, or annul any decision on the matters listed in Sections 65901 and 65903, or to determine the reasonableness, legality, or validity of any condition attached to a variance, conditional use permit, or any other permit."[6] According to the trial court, the holding of *Travis, supra,* 33 Cal.4th 757, meant that "as long as a party brings an action to challenge an ordinance within 90 days of the time that the ordinance has been enforced against the party, then the party may raise, among others, a facial attack."

Turning to the Cooperative's facial challenge to the Ordinance, the trial court explained that *Cleburne, supra,* 473 U.S. 432, required it to "examine[] the proceedings to determine if the [County's] proffered reasons for the [permit] requirement were in fact rational or merely based on groundless

---

[6] The case before us does not involve "any decision on the matters listed in Sections 65901 and 65903 . . . ." (§ 65009, subd. (c)(1)(E).) Section 65901 concerns decisions by boards of zoning adjustment or zoning administrators on applications for permits or variances. Section 65903 sets out the duties of boards of appeals that review decisions of a board of zoning adjustment or zoning administrator.

assumptions, fears, and prejudices." It went on to consider the evidence the County provided in support of its motion for reconsideration, but it found the documents did not satisfy the *Cleburne* standard because they failed to demonstrate the County had actually considered "any meaningful evidence to support the fears of crime" that the County claimed were the rational interest underlying the Ordinance.

The trial court also granted the Cooperative's motion to file a supplementary complaint and granted it a preliminary injunction. It found that "although absent the challenged ordinance there is no local zoning ordinance expressly discussing operations such as [the Cooperative's], the zoning of the property where [the Cooperative] seek[s] to operate potentially covers their operation."

### *The April 28 Order*

On April 28, 2010, the trial court issued, on its own motion, a modified order (the April 28 Order). The April 28 Order explained that the court was issuing a writ of mandate pursuant to Code of Civil Procedure section 1085, thus rendering the Cooperative's request for an injunction "effectively moot." The trial court reiterated its view that the Cooperative's action was timely filed under section 65009, subdivision (c)(1)(E). It noted the Cooperative was making both an as-applied and a facial attack on the Ordinance, but it found that there was no valid argument that the Ordinance was being invalidly applied, "since the alleged defect is in the [O]rdinance itself, not in the manner or circumstances in which it is being applied." The trial court nevertheless agreed with the Cooperative's facial challenge, and it issued a writ of mandate requiring the County to cease enforcing the Ordinance.

### *Proceedings in This Court*

On June 2, 2010, the County filed an appeal from the portion of the trial court's April 13 Order granting the Cooperative's request for a preliminary injunction. (Code Civ. Proc., § 904.1, subd. (a)(6).) That appeal is pending under *Marvin's Garden Cooperative Inc. v. County of Sonoma* (A128666).

The County filed a petition for writ of mandate and request for stay on June 9, 2010. The County's petition seeks review of portions of two of the trial court's orders. First, it seeks review of the portion of the April 13 Order that invalidated the Ordinance. Second, it seeks review of the portion of the April 28 Order invalidating the Ordinance and issuing a writ of mandate under Code of Civil Procedure section 1085 that prohibits enforcement of the

Ordinance. The County also requested a stay of the subject orders pending resolution of its petition.

On June 9, 2010, we deferred a ruling on the County's stay request and requested informal opposition from the Cooperative. It filed its opposition on June 18, and the County replied four days later. On June 24, we issued an order to show cause and granted the County's request for a temporary stay.[7] The Cooperative then filed a return to the petition, to which the County has replied.[8]

### DISCUSSION

The County challenges the trial court's orders on a number of grounds. Its first argument is that the Cooperative's action is barred by the 90-day statute of limitations set forth in section 65009, subdivision (c)(1)(B). The County also contends the trial court made a number of errors in its rulings on the Cooperative's successful equal protection challenge to the Ordinance. We agree with the County that the action is barred by the statute of limitations. Therefore we do not reach the constitutional issues decided by the trial court. (See *Santa Clara County Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220, 230–231 [45 Cal.Rptr.2d 207, 902 P.2d 225].)

### I.   *Standard of Review*

The County's limitations argument presents a legal question that does not involve disputed issues of fact. The trial court based its decision solely on the documents submitted by the parties, and it made clear it "did not make any attempt to pass on the correctness of any evidence." Moreover, the facts relevant to determining when the statute of limitations began to run on the Cooperative's action are apparent on the face of the record. Where, as here, "the relevant facts are not in dispute, the application of the statute of

---

[7] The Cooperative argues that review by extraordinary writ of the issues raised in the petition is improper. Following our review of the parties' extensive briefing on this topic, we issued our order to show cause. As our order to show cause necessarily represents our determination that writ review is appropriate, we will not revisit the issue here. (*Community Care & Rehabilitation Center v. Superior Court* (2000) 79 Cal.App.4th 787, 790, fn. 3 [94 Cal.Rptr.2d 343], disapproved on other grounds in *Covenant Care, Inc. v. Superior Court* (2004) 32 Cal.4th 771, 791, fn. 12 [11 Cal.Rptr.3d 222, 86 P.3d 290]; see *Robbins v. Superior Court* (1985) 38 Cal.3d 199, 205 [211 Cal.Rptr. 398, 695 P.2d 695].)

[8] In addition to the briefs of the parties, we granted the application of the League of California Cities and California State Association of Counties to file an amicus curiae brief in support of the County.

limitations may be decided as a question of law." (*International Engine Parts, Inc. v. Feddersen & Co.* (1995) 9 Cal.4th 606, 611 [38 Cal.Rptr.2d 150, 888 P.2d 1279].) We therefore exercise our independent appellate review. (*American Internat. Group, Inc. v. Superior Court* (1991) 234 Cal.App.3d 749, 755 [285 Cal.Rptr. 765].)

## II. *The Parties' Contentions*

The County argues the Cooperative's action was untimely filed, because under section 65009, subdivision (c)(1)(B), challenges to a legislative body's decision to adopt a zoning ordinance must be brought within 90 days. It notes the trial court relied exclusively on the Cooperative's facial challenge to strike down the Ordinance. According to the County, since the challenge is a facial one, the 90-day limitations period runs from the effective date of the Ordinance. (See, e.g., *Arcadia Development Co. v. City of Morgan Hill* (2008) 169 Cal.App.4th 253, 261 [86 Cal.Rptr.3d 598] (*Arcadia Development Co.*), citing *Hensler v. City of Glendale* (1994) 8 Cal.4th 1, 22 [32 Cal.Rptr.2d 244, 876 P.2d 1043] (*Hensler*).) The Ordinance became effective on April 20, 2007, and thus the County contends that the Cooperative's October 13, 2009 action challenging the Ordinance was filed some 810 days too late.

The Cooperative asserts its action was timely because it was filed 11 days after issuance of the October 2, 2009 stop order. In the Cooperative's view, the trial court correctly held that the applicable limitations period is provided by section 65009, subdivision (c)(1)(E). The Cooperative argues that since it brought a timely as-applied challenge, under *Travis, supra,* 33 Cal.4th 757, it could properly bring a facial attack regardless of the length of time between enactment of the Ordinance and the filing of its complaint. According to the Cooperative, it is irrelevant that the trial court found its as-applied challenge invalid. Because it asserted an as-applied challenge within 90 days of "enforcement proceedings" against it, its facial challenge is timely as well.

For the reasons that follow, we hold the trial court erred in concluding the Cooperative's action was timely filed.

## III. *Section 65009—Determining the Applicable Limitations Period*

In enacting section 65009, the Legislature's intent was "to provide local governments with certainty, after a short 90-day period for facial challenges, in the validity of their zoning enactments and decisions." (*Travis, supra,* 33 Cal.4th at p. 774; see § 65009, subd. (a)(3).) To that end, section 65009, subdivision (c)(1) establishes a 90-day statute of limitations for

actions challenging either the adoption or amendment of a zoning ordinance or the validity of conditions attached to variances, conditional use permits, or other permits. (§ 65009, subd. (c)(1)(B), (E).)

The limitations periods set out in the statute are triggered by specific acts of local land use planning authorities. (*Urban Habitat Program v. City of Pleasanton* (2008) 164 Cal.App.4th 1561, 1576 [80 Cal.Rptr.3d 300] (*Urban Habitat*).) For the actions described in section 65009, subdivision (c)(1), the 90-day limitations period begins to run from the date on which the challenged decision is made. (*Urban Habitat*, at p. 1571.) Thus, where a party brings a facial challenge to a zoning ordinance, the limitations period begins to run on the date the ordinance becomes effective. (*Arcadia Development Co., supra*, 169 Cal.App.4th at p. 261.) If a party challenges conditions attached to a conditional use permit or other permit, the limitations period runs from the date of final administrative action on the permit. (*Travis, supra*, 33 Cal.4th at p. 767.)

■ Thus, to pinpoint when the statute of limitations began to run on the Cooperative's claims, one must determine what specific governmental act or acts the Cooperative sought to challenge. (See *Urban Habitat, supra*, 164 Cal.App.4th at p. 1576.) To do so, courts examine the nature of the party's claims. The true nature of those claims may be found by looking to the allegations of the pleadings and to the relief requested in the court below. (See *Honig v. San Francisco Planning Dept.* (2005) 127 Cal.App.4th 520, 528 [25 Cal.Rptr.3d 649] [examining allegations of petition for writ of administrative mandate to determine nature of action challenged]; *Howard Jarvis Taxpayers Assn. v. City of Los Angeles* (2000) 79 Cal.App.4th 242, 247 [93 Cal.Rptr.2d 742] [looking to relief sought by complaint to determine applicable limitations period]; *Urban Habitat, supra*, 164 Cal.App.4th at pp. 1574–1580 [examining allegations of complaint to determine applicability of limitations period in § 65009, subd. (d)].)

In this case, the trial court determined the Cooperative's only valid challenge was facial in nature. As the trial court correctly recognized, the Cooperative had not applied for a permit for the Guerneville location. The court concluded the Cooperative had made no valid as-applied challenge, "since the alleged defect is in the [O]rdinance itself, not in the manner or circumstances in which it is being applied."[9] It further found the

---

[9] In a footnote in its return to the petition, the Cooperative asserts that despite the trial court's ruling, it nonetheless believes it made a valid as-applied challenge. As counsel for the County correctly noted at oral argument, if the Cooperative wished to dispute the trial court's conclusion on this point, the Cooperative should have filed its own writ petition (in the nature of a cross-petition) to bring that argument before this court. (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2010) ¶ 15:227.5, p. 15-96.7 (rev. # 1,

Cooperative's attack on the Ordinance was premised on its equal protection claim, and it rejected the Cooperative's freedom of association and statutory challenges.

Despite its acknowledgement that the Cooperative had failed to apply for a permit, the trial court concluded the Cooperative's action was subject to the limitations period in section 65009, subdivision (c)(1)(E), which applies to actions seeking review of permit conditions. Further, despite its ruling that there was no valid as-applied challenge, the trial court held the Cooperative's facial challenge was timely. The trial court explained that "according to *Travis*, as long as a party brings an action to challenge an ordinance within 90 days of the time that the ordinance has been enforced against the party, then the party may raise, among others, a facial attack." It reasoned that since the Cooperative brought suit within 90 days of the County's "enforcement proceedings," the Cooperative's action was timely.

IV. *The Cooperative's Action Is Barred by Section 65009,*
   *Subdivision (c)(1)(B).*

■ The trial court's conclusion that the Cooperative's challenge was timely is incorrect on several grounds. First, the court's reasoning is internally inconsistent and cannot be squared with the language of section 65009, subdivision (c)(1)(E). Second, the Cooperative's action is not timely merely because it was brought within 90 days of the issuance of the October 2, 2009 stop order. Third, *Travis, supra*, 33 Cal.4th 757, does not hold that a party may escape the limitations period imposed by the statute merely by claiming that its challenge to a zoning ordinance is an as-applied one.

A. *The Action Does Not Fall Within Section 65009,*
   *Subdivision (c)(1)(E).*

The trial court recognized the undisputed fact that the Cooperative has never applied for a permit for its Guerneville location. Section 65009, subdivision (c)(1)(E) provides a 90-day statute of limitations for actions ". . . to determine the reasonableness, legality, or validity of any condition attached to a variance, conditional use permit, or any other permit." (§ 65009, subd. (c)(1)(E).) Since the Cooperative never applied for a permit, its action cannot be viewed as a challenge to a condition attached to a conditional use

2010).) A real party in interest may not obtain review of adverse trial court determinations by way of response to another party's writ petition. (*Campbell v. Superior Court* (2005) 132 Cal.App.4th 904, 922 [34 Cal.Rptr.3d 68].) Accordingly, we will not consider the Cooperative's contention regarding its as-applied challenge, because that argument is not properly before us in this proceeding.

permit or any other permit.[10] Its action therefore does not fit within the plain language of section 65009, subdivision (c)(1)(E).

We agree with the trial court that "the alleged defect is in the [O]rdinance itself, not in the manner or circumstances in which it is being applied." Indeed, it is apparent from the Petition/Complaint that the Cooperative asserted an injury arising solely from the Ordinance's enactment. (See *Travis, supra,* 33 Cal.4th at p. 768.) The Cooperative's prayer for relief asked the trial court to compel the County to permit the Cooperative to operate without having to apply for a special use permit. It further sought injunctive relief "to enjoin [the County's] zoning [O]rdinance" as discriminatory in nature. Finally, the Cooperative sought a declaration that the Ordinance "requiring the [Cooperative] to obtain a special use permit before operating as a medical cannabis cooperative in the County is void on its face and as applied." Thus, the Cooperative's challenge is facial in nature.[11] (See *Howard Jarvis Taxpayers Assn. v. City of Los Angeles, supra,* 79 Cal.App.4th at p. 247 [complaint seeking to declare zoning ordinance illegal and invalid and to enjoin its enforcement was facial challenge barred by § 65009, subd. (c)(1)(B)].) Consequently, the statute of limitations began to run on the effective date of the Ordinance in April 2007, and the Cooperative's action is time-barred. (§ 65009, subd. (c)(1)(B); see *Arcadia Development Co., supra,* 169 Cal.App.4th at pp. 259–260 [action challenging ordinance on equal protection grounds was facial in nature and subject to § 65009, subd. (c)(1)(B)].)

Having reached this conclusion, we will now examine the arguments the Cooperative advances in support of the trial court's holding that its facial challenge was timely even though it was brought almost two and one-half years after the Ordinance's effective date.

## B. *The Limitations Period Does Not Run from the Date of the Stop Order.*

The trial court appears to have concluded the action was timely because it was brought within 90 days of the initiation of "enforcement proceedings"

---

[10] We will not address the Cooperative's contention—first raised at oral argument—that it should be excused from applying for a permit because any such application would have been futile. The Cooperative did not make this argument in its briefs to this court, and it is therefore forfeited. (See *People v. Thompson* (2010) 49 Cal.4th 79, 110, fn. 13 [109 Cal.Rptr.3d 549, 231 P.3d 289] [an argument not made in briefs cannot properly be raised at oral argument].)

[11] The mere inclusion of the words "as applied" in the prayer for relief is not determinative. As explained above, we may examine the allegations of the pleadings and the relief requested to ascertain the nature of the Cooperative's challenge. (See *Honig v. San Francisco Planning Dept., supra,* 127 Cal.App.4th at p. 528.) In so doing, we will not "exalt form over substance." (*Ibid.*) It is the "gravamen of plaintiff's cause of action" that matters, "regardless of the title attached to the cause of action or the remedy sought . . . ." (*Hensler, supra,* 8 Cal.4th at p. 26.)

against the Cooperative. By "enforcement proceedings," the trial court evidently meant the County's issuance of the October 2, 2009 stop order. We disagree that the limitations period on the Cooperative's suit ran from the date of that order. Instead, we are in accord with the County's view that because "there was no administrative adjudicatory decision related to [the Cooperative's] claims," the limitations period cannot have commenced on any date other than the effective date of the Ordinance.

Contrary to the trial court's apparent assumption, the stop order is not a "final *adjudicatory* administrative decision," and in its briefs in this court, the Cooperative does not contend that it is. (*Hensler, supra,* 8 Cal.4th at p. 22, italics added; see *Travis, supra,* 33 Cal.4th at p. 769 [describing county's imposition of permit conditions as "adjudicatory decision"].) In the court below, the County argued without contradiction that the Sonoma County Code provided procedures by which the Cooperative could obtain an administrative hearing and decision on its challenge to the stop order. The Cooperative does not claim that it exhausted those procedures. Had it done so, it would have received an administrative adjudication regarding the stop order and could then have sought judicial review of that final adjudicatory administrative decision.[12] (See *Martin v. Riverside County Dept. of Code Enforcement* (2008) 166 Cal.App.4th 1406, 1409–1410 [83 Cal.Rptr.3d 624] [discussing administrative adjudicatory procedure for review of county's citation of property owner for permit violation].)

Under *Hensler,* the limitations period for challenging the application of a land use regulation to a specific piece of property runs from date of the final adjudicatory administrative decision. (*Hensler, supra,* 8 Cal.4th at p. 22.) No such decision exists in this case. Since the Cooperative's claims of facial invalidity also are not challenges to a final adjudicatory administrative decision (*Fishback v. County of Ventura* (2005) 133 Cal.App.4th 896, 907 [35 Cal.Rptr.3d 199]), its action is time-barred even though it was brought 11 days after the date of the stop order.

---

[12] The Cooperative's failure to exhaust this administrative remedy would thus bar its challenge to the County's action in any event. (*Sea & Sage Audubon Society, Inc. v. Planning Com.* (1983) 34 Cal.3d 412, 414–416 [194 Cal.Rptr. 357, 668 P.2d 664] [plaintiffs' failure to comply with city's administrative appeal procedures barred administrative mandamus action challenging approval of development project]; *Park Area Neighbors v. Town of Fairfax* (1994) 29 Cal.App.4th 1442, 1448, 1450 [35 Cal.Rptr.2d 334] [doctrine of exhaustion of administrative remedies barred association's challenge to planning commission's actions where association did not file administrative appeal in accordance with town code]; see also *Tahoe Vista Concerned Citizens v. County of Placer* (2000) 81 Cal.App.4th 577, 591 [96 Cal.Rptr.2d 880] [whether administrative remedies have been exhausted in a given case depends upon procedures applicable to the agency in question].)

C. *The Holding of* Travis *Does Not Apply to the Cooperative's Action.*

The trial court relied on *Travis, supra,* 33 Cal.4th 757, in concluding that the Cooperative's action was not barred by section 65009. The facts of *Travis* differ in significant respects from those of the case before us, however. *Travis* involved a challenge by three property owners to a county ordinance imposing restrictions on second dwelling units on residential property. (33 Cal.4th at pp. 762, 764.) One owner, Travis, applied for and was granted a permit to construct a second dwelling unit on his property subject to conditions imposed under the ordinance in question. (*Id.* at p. 764.) He filed an administrative appeal against the permit conditions, which the county planning director denied on June 21, 1999. The other owners, the Sokolows, also sought and received a second unit permit containing certain restrictions. They received their permit on October 12, 1998, but did not pursue an administrative appeal. (*Ibid.*)

All three owners filed a petition for writ of mandate on September 7, 1999, alleging, inter alia, that the county's ordinance was preempted by state statute and violated the federal Constitution. (*Travis, supra,* 33 Cal.4th at p. 764.) Addressing the timeliness of plaintiffs' action, the Supreme Court first characterized the suit as one to " 'determine the . . . validity' of conditions imposed on their permits and to 'void, or annul' the decisions imposing those conditions." (*Id.* at p. 766, quoting § 65009, subd. (c)(1)(E).) The nature of the action thus meant it was subject to the 90-day statute of limitations in section 65009, subdivision (c)(1)(E). (33 Cal.4th at pp. 766–767.) Accordingly, the Supreme Court held Travis's action timely as to his challenges to the validity of conditions imposed on his permit, since it had been brought within 90 days of "final administrative action" on that permit. (*Id.* at p. 767.) In contrast, the Sokolows' challenge to their permit conditions was untimely, since it "was brought almost 11 months after the Sokolows' permit application was approved." (*Ibid.*)

The Supreme Court went on to hold that section 65009, subdivision (c)(1)(E) did not bar Travis from making a facial attack on the validity of the county's ordinance. (*Travis, supra,* 33 Cal.4th at pp. 767–771.) It reasoned that Travis was not complaining of an injury arising solely from the ordinance's enactment. (*Id.* at p. 768.) He was, in addition, seeking relief from the county's imposition of permit conditions required by the ordinance. (*Id.* at p. 769.) As Travis had stated a timely as-applied challenge to the ordinance, the high court held that section 65009, subdivision (c)(1)(E) did not restrict the legal theories or claims Travis could make in his action.

(*Travis, supra*, 33 Cal.4th at pp. 767–769.) The court also expressed concern about the potential for unjust and unconstitutional results if an ordinance could not be challenged within 90 days of its application to a particular property, because "a property owner subjected to a regulatory taking through application of the ordinance against his or her property would be without remedy unless the owner had had the foresight to challenge the ordinance when it was enacted, possibly years or even decades before it was used against the property." (*Id.* at p. 770.)

It is immediately apparent that the case before us is factually dissimilar to *Travis*. Here, there was no application for a permit, and thus the Cooperative is not challenging the kind of "final administrative action" at issue in that case. (*Travis, supra*, 33 Cal.4th at p. 767.) This distinction is significant, because Travis was allowed to press his facial claims only because he had brought a timely as-applied challenge to the conditions imposed in his permit. As the Supreme Court explained, "[t]his is not a case in which the plaintiff complains of injury *solely* from a law's enactment." (*Id.* at p. 768, original italics.) It emphasized that when a property owner challenges an adjudicatory decision applying an ordinance to his or her property, "the validity of the legislation cannot be the *only* issue at stake . . . ." (*Id.* at p. 769, fn. 4, original italics.) Here, in contrast, the Cooperative's claimed injury arose from the Ordinance itself, and the validity of the Ordinance was the only issue in the litigation.

The Cooperative interprets *Travis* as standing for the broad proposition that once a party asserts what it claims is an as-applied challenge, its action falls within section 65009, subdivision (c)(1)(E), and it may therefore make a facial attack on the zoning ordinance; that the trial court found the as-applied challenge invalid is irrelevant. All that matters, in the Cooperative's view, is that its so-called as-applied challenge was filed within 90 days of the enforcement proceedings against it, and its facial challenge was asserted therewith.

We do not read *Travis* so broadly, and we find several flaws in the Cooperative's interpretation of the case. First, as we explained in part IV.A., *ante*, the Cooperative's action simply does not fit within the plain language of section 65009, subdivision (c)(1)(E) because it does not involve a challenge to permit conditions. Thus, *Travis*'s holding that section 65009, subdivision (c)(1)(E) does not restrict the legal theories or claims that may be made in actions challenging permit conditions is not relevant here. (See *Travis, supra*, 33 Cal.4th at p. 767.) Second, we do not agree that a party may evade the statute of limitations for facial challenges to a zoning ordinance merely

by filing something it terms an "as-applied" challenge. It is the nature or gravamen of the Cooperative's action that determines when the limitations period begins, not the label the Cooperative affixes to its pleadings. (See *Hensler, supra,* 8 Cal.4th at p. 26; *Urban Habitat, supra,* 164 Cal.App.4th at p. 1576 [limitations periods triggered by specific acts of local authorities].) Third, given the Legislature's clearly stated intent to reduce delay and provide certainty to local governments in their zoning decisions (§ 65009, subd. (a)(1), (3)), we are unwilling to embrace an interpretation of *Travis* that might well undermine the purpose of the statute. (See *Wagner v. City of South Pasadena* (2000) 78 Cal.App.4th 943, 950 [93 Cal.Rptr.2d 91] ["the statute mandates strict compliance with the statute of limitations and service periods"].) Finally, the concerns expressed in *Travis* about the possible unfairness to property owners who might have been unable to foresee the future application of a zoning ordinance to their property simply are not present in this case.[13] (See *Travis, supra,* 33 Cal.4th at p. 770.)

## V. *Conclusion*

██ The Cooperative's claims were based on a facial challenge to the Ordinance. To be timely, such a challenge had to have been brought within 90 days of the Ordinance's effective date. (§ 65009, subd. (c)(1)(B); *Arcadia Development Co., supra,* 169 Cal.App.4th at p. 261.) The limitations period for facial challenges expired long before the Cooperative brought suit. The action below was therefore time-barred and should have been dismissed as untimely. (§ 65009, subds. (c)(1)(B), (e).)

### DISPOSITION

The order to show cause is discharged. The County's petition for writ of mandate is granted. Let a peremptory writ of mandate issue commanding respondent superior court to vacate the portions of its orders of April 13, 2010, and April 28, 2010, granting the Cooperative's petition for writ of

---

[13] Although the limitations period would apply even if the Cooperative did not have actual knowledge of the Ordinance's enactment, we note the record demonstrates the Cooperative was aware prior to enactment that the Ordinance might affect its property and operations. In fact, the Cooperative participated actively in the proceedings that led to the adoption of the Ordinance. A member of the Cooperative's board of directors spoke at the planning commission hearing on the proposed zoning change, and individuals affiliated with the Cooperative, including Worden, submitted a letter to the planning commission that specifically addressed the permit issue. In addition, the Cooperative submitted a letter to the County's board of supervisors, and a representative of the Cooperative testified at the board's January 30, 2007 meeting.

mandate and to enter a new and different order denying the petition consistent with the views expressed in this opinion. The previously issued stay shall dissolve upon issuance of the remittitur. (Cal. Rules of Court, rules 8.272(b), 8.490(c).) The County shall recover its costs. (Cal. Rules of Court, rule 8.493(a)(1)(A).)

Needham, J., and Bruiniers, J., concurred.