Filed 7/25/11

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| ESTUARDO ARDON, | ) | |
| | ) | S174507 |
| Plaintiff and Appellant, | ) | |
| | ) | Ct.App. 2/3 B201035 |
| v. | ) | |
| | ) | Los Angeles County |
| CITY OF LOS ANGELES, | ) | Super. Ct. No. BC363959 |
| | ) | |
| Defendant and Respondent. | ) | |
| _____ | ) | |

In this case, we must decide whether Government Code section 910 (section 910)[1] allows taxpayers to file a class action claim against a municipal governmental entity for the refund of local taxes. In *City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 455 (*City of San Jose*), we held that section 910 permits a litigant to bring a class claim against a local government. We later held in *Woosley v. State of California* (1992) 3 Cal.4th 758, 792 (*Woosley*), however, that class claims to recover tax refunds are *not* permitted in certain situations because article XIII, section 32 of the California Constitution prevents the judiciary "from expanding the methods for seeking tax refunds expressly provided by the Legislature." As we explain, neither *Woosley*, which concerned the interpretation of statutes *other* than section 910, nor article XIII, section 32 of the California Constitution, applies to our determination of whether section 910 permits class claims that seek the refund of local taxes. We therefore conclude that the reasoning of *City of San Jose*, which permitted a class claim against a municipal

---

[1] All statutory references are to the Government Code unless otherwise noted.

1

government in the context of an action for nuisance under section 910, also permits taxpayers to file a class claim seeking the refund of local taxes under the same statute.

## FACTS AND PROCEDURAL BACKGROUND

Plaintiff Estuardo Ardon (Ardon) is a resident of defendant City of Los Angeles (City). In October 2006, Ardon filed a class action lawsuit on behalf of himself and similarly situated individuals challenging the City's telephone users tax (TUT) and seeking refund of funds collected under the TUT over the previous two years. Ardon asserted that the City's municipal code exempts all amounts paid for telephone service from the TUT to the extent that those amounts are also exempt from the federal excise tax (FET). Ardon contends that since the FET was improperly collected, so too was the TUT. In December 2006, Ardon received a notice from the Los Angeles City Attorney rejecting his attempt to present a tax refund claim on behalf of a class due to lack of legal standing.

Ardon's complaint against the City sought, inter alia, injunctive and declaratory relief to prevent continued unlawful collection of the TUT, declaratory relief alleging the unconstitutional amendment of the TUT by the Los Angeles City Council,[2] money had and received in unjust enrichment, and violation of the due process clauses of the Fourteenth and Fifth Amendments to the United States Constitution. The complaint sought certain remedies, including certification as a class action, an accounting of the TUT funds collected by the City, and return of money wrongfully taxed.

---

**2**    Subsequent to Ardon's filing his complaint, the City amended Los Angeles Municipal Code section 21.1.3 to remove all references to the FET. The city council passed the amendment to the ordinance on January 9, 2007. (L.A. Ord. No. 178,219.) In the Court of Appeal, the City contended that Ardon must file the refund claim under Los Angeles Municipal Code section 21.07 and former section 21.1.2 governing claims for refund of overpayment of business or use taxes. As the court observed, however, those code sections do not apply to Ardon's claim that the City's TUT was an illegal tax. The City does not renew its claim here. Therefore, we do not address any issues involving preemption of the municipal code provisions in this case.

2

The City demurred to Ardon's complaint and moved to strike all class action allegations on the grounds that *Woosley* prohibited Ardon from filing a claim against the City for the refund of taxes on behalf of a putative class. Instead, the City argued, *each member* of the alleged class must file a government claim with the City *before* Ardon could proceed with a class action lawsuit. The superior court granted the City's motion to strike all class allegations. It also partially overruled and partially sustained the demurrer without leave to amend, and stayed other causes of action. Ardon filed a timely appeal from the interlocutory order striking the class allegations.

A divided Court of Appeal affirmed the trial court's order refusing to certify the class. In so doing, the panel specifically rejected its own reasoning and contrary holding in a factually similar case, *County of Los Angeles v. Superior Court* (2008) 159 Cal.App.4th 353 (*Oronoz*). The Court of Appeal dissent would have followed the opinion in *Oronoz*, which held that under *City of San Jose'*s construction of section 910, a "claimant" could be an entire class as well as an individual. (*Oronoz, supra*, at p. 367.) We granted review to resolve the conflict in the appellate courts regarding permissible class claims under section 910.

## DISCUSSION

Before 1959, taxpayer and other claims against the state, local, and municipal governments were governed by myriad state statutes and local ordinances. Finding this system too complex, the Legislature enacted the Government Claims Act (the Act), which established a standardized procedure for bringing claims against local governmental entities. (Stats. 1959, ch. 1724, p. 4133, enacting former Gov. Code, § 700 et seq. [replacing more than 150 separate procedures for directing claims against local governmental entities]; now § 900 et seq.) [3]

---

[3]     Section 910 states: "A claim shall be presented by the claimant or by a person acting on his or her behalf and shall show all of the following: [¶] (a) The name and post office address of the claimant. [¶] (b) The post office address to which the person presenting the claim desires notices to be sent. [¶] (c) The date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted. [¶]

Section 910 does not specifically apply to tax refunds, but to all claims against governmental entities.  (See *City of San Jose*, *supra*, 12 Cal.3d at p. 454.)  The purpose of the claims statutes "is to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation."  (*Id.* at p. 455.)  As originally proposed, the standardized procedures of the Act embodied in section 910 would not have applied to "[c]laims under the Revenue and Taxation Code or other *provisions of law* prescribing procedures for the refund . . . of any tax . . . ."  (Recommendation and Study Relating to the Presentation of Claims Against Public Entities (Jan. 1959) 2 Cal. Law Revision Com. Rep. (1959) p. A-12  (proposed former § 703, subd. (a), italics added.)  However, the Legislature specifically rejected this proposal and instead enacted former section 703, subdivision (a) (now § 905, subd. (a)), which exempted from section 910 "[c]laims under the Revenue and Taxation Code or other *statute* prescribing procedures for the refund . . . of any tax . . . ."  (Stats. 1959, ch. 1724, pp. 4133-4134, italics added.)

The issue in *City of San Jose* was whether a class claim could satisfy the claim requirements of section 910, or whether such class action claims could not be maintained against governmental entities.  (*City of San Jose*, *supra*, 12 Cal.3d at p. 455.)  The plaintiffs had filed a class claim against the City of San Jose under section 910, alleging that aircraft noise, dust, vapors, and vibration arising from operations at the San Jose Municipal Airport were a nuisance and diminished the market value of their property.  (*City of San Jose*, at pp. 453, 455.)  This court adopted a two-part test for determining whether the claim satisfied section 910:  "Is there *some* compliance with *all* of the

_____

(d) A general description of the indebtedness, obligation, injury, damage or loss incurred so far as it may be known at the time of presentation of the claim. [¶] (e) The name or names of the public employee or employees causing the injury, damage, or loss, if known. [¶] (f) The amount claimed if it totals less than ten thousand dollars ($ 10,000) as of the date of presentation of the claim . . . together with the basis of computation of the amount claimed. If the amount claimed exceeds ten thousand dollars ($10,000), no dollar amount shall be included in the claim.  However, it shall indicate whether the claim would be a limited civil case."

statutory requirements; and, if so, is this compliance sufficient to constitute *substantial compliance?*" (*City of San Jose*, at pp. 456-457.)

In addressing the section 910 class claim, *City of San Jose* concluded that the word "claimant" referred to "the class itself," not to an individual class member. The court "reject[ed] the suggested necessity for filing an individual claim for each member of the purported class." (*City of San Jose*, *supra*, 12 Cal.3d at p. 457.) The court reasoned that "[t]o require such detailed information in advance of the complaint would severely restrict the maintenance of appropriate class actions—contrary to recognized policy favoring them." (*Ibid.*; see Code Civ. Proc., § 382; see also *Vasquez v. Superior Court* (1971) 4 Cal.3d 800.) The court did not believe that section 910 was "intended to thwart class relief." (*City of San Jose*, *supra*, 12 Cal.3d at p. 457.) Because satisfaction of section 910's procedural requirements obliged a representative class plaintiff to supply information detailing his or her name, address, and other specified information, any information beyond this requirement to identify the class itself was sufficient to satisfy the " 'some compliance' test." (*City of San Jose*, *supra*, 12 Cal.3d at p. 457.) "Beyond this, the sufficiency of the identifying information must be measured by the *substantial compliance* test." (*Ibid.*) A claim substantially complies with a claims statute if the parties have stated sufficient information "to reasonably enable the public entity to make an adequate investigation of the merits of the claim and to settle it without the expense of a lawsuit." (*Id*. at p. 456.)

*Woosley* was a constitutional challenge to the state's vehicle license fees and use taxes imposed on passenger vehicles sold outside California. The numerous issues included the question of whether the trial court had erred in certifying the claim as a class claim. *Woosley* held that article XIII section 32 of the California Constitution compelled an action for tax refunds against the state to be brought in the manner that the Legislature specified under the statutes at issue. (*Woosley*, *supra*, 3 Cal.4th at p. 789.)[4] The court

---

[4]    Article XIII, section 32 of the California Constitution reads, "No legal or equitable process shall issue in any proceeding in any court against this State or any officer thereof

concluded that statutes dictating the procedural requirements for obtaining refunds of vehicle license fees and use taxes did not authorize class action claims. (*Woosley*, at p. 788; see Veh. Code, § 42231; Rev. & Tax. Code, §§ 6901 et seq., 6486.) Rather, the language of those statutes indicated that "a claim for a refund of vehicle license fees must be filed by '*the person* who has paid the erroneous or excessive fee or penalty, *or his agent on his behalf*.' . . . [T]he term 'person' does not include a class, and a class representative who files a claim on behalf of all others similarly situated, without the knowledge or consent of such other persons, is not the agent of the members of the class." (*Woosley*, *supra*, at p. 790, quoting Veh. Code, § 42231.) Because article XIII, section 32 of the California Constitution requires tax refund claims to be made in the specific manner prescribed by the Legislature, we concluded that the particular statutes at issue in *Woosley* did not authorize class claims.

Regarding class-based refunds for use taxes, *Woosley* observed that "[a]n examination of the entire statutory scheme that governed requests for refunds of sales and use taxes when Woosley's claim was filed in 1977 reveals . . . that class claims were not contemplated. If the [State Board of Equalization] denied a claim, that entity was required, within 30 days, to 'serve notice of its action on the claimant in the manner prescribed for service of notice of a deficiency determination.' ([Rev. & Tax. Code,] § 6906.) [Revenue and Taxation Code] [s]ection 6486, in turn, provided in 1977 that the [State Board of Equalization] shall give written notice of a deficiency determination 'to the retailer or person storing, using, or consuming tangible personal property,' either by mail or by 'delivering it to the person to be served.' The language of section 6486 suggests that notice must be given to each individual taxpayer. No mention is made of notice to a class representative. The requirement that notice of the denial of a claim must be given to each individual taxpayer thus is inconsistent with the use of a class claim."

---

to prevent or enjoin the collection of any tax. After payment of a tax claimed to be illegal, an action may be maintained to recover the tax paid, with interest, in such manner as may be provided by the Legislature."

6

(*Woosley*, *supra*, 3 Cal.4th at pp. 790-791.) *Woosley,* therefore, addressed the limited question of whether Vehicle Code section 42231 and Revenue and Taxation Code sections 6901 et seq. and 6486 permitted class actions by citizens seeking refunds of taxes and fees *from the state*. When construed in light of article XIII, section 32 of the California Constitution, we concluded that the Legislature did not intend to authorize class claims for the refund of fees and taxes *under those particular statutes*. (*Woosley*, at pp. 789-792.)

Woosley also stated that "the holding in *City of San Jose* . . . should not be extended to include claims for tax refunds." (*Woosley*, *supra*, 3 Cal.4th at p. 789.) However, we did not mean that *City of San Jose* forbids *all* class action claims for tax refunds; rather, *Woosley* precluded class claims for tax refunds where the Legislature has explicitly set forth procedures for obtaining those refunds and has refused to authorize class claims under those procedures. Specifically, *Woosley* criticized "[s]everal decisions of the Court of Appeal [that] extended the holding in *City of San Jose* to permit the filing of class claims seeking tax refunds, reasoning by analogy to the claims statute construed in *City of San Jose* that the *existing tax-refund statutes* could and should be interpreted to authorize the filing of class claims." (*Id.* at p. 788, italics added.) It is important to note that *none* of the Court of Appeal decisions this court criticized in *Woosley* either construed or applied section 910. (See *Schoderbek v. Carlson* (1980) 113 Cal.App.3d 1029, 1033 [property tax statute]; *Lattin v. Franchise Tax Board* (1977) 75 Cal.App.3d 377, 381 [income tax statute]; *Santa Barbara Optical Co. v. State Bd. of Equalization* (1975) 47 Cal.App.3d 244, 249 [sales tax statute]; *Javor v. State Bd. of Equalization* (1977) 73 Cal.App.3d 939, 948 [sales tax statute].)

Several cases decided after *Woosley* have concluded that article XIII, section 32 of the California Constitution bars class claims and class actions for the refund of locally adopted taxes absent specific state statutory authority. (See *Batt v. City and County of San Francisco* (2007) 155 Cal.App.4th 65, 74-75 [sustaining demurrer to plaintiff's class action challenging city's transient occupancy hotel tax]; *Howard Jarvis Taxpayers Assn.*

7

*v. City of Los Angeles* (2000) 79 Cal.App.4th 242, 249 [rejecting taxpayer suit challenging a municipal home occupation ordinance]; *Neecke v. City of Mill Valley* (1995) 39 Cal.App.4th 946, 961-962 [rejecting property owner's action challenging a city property tax].) As *Oronoz* observed, however, these cases are distinguishable, because they all considered statutes or municipal ordinances enacted to provide specific procedures for filing tax claims against governmental entities — procedures that are not applicable or required in this case. (*Oronoz*, *supra*, 159 Cal.App.4th at p. 365, fn. 9.) In addition, like the *Oronoz* court, we specifically disagree with the overbroad statement in *Howard Jarvis Taxpayers Assn.* that "class-action-type lawsuits seeking a refund of fees and taxes are barred unless each plaintiff has first filed an administrative refund claim with the City." (*Id.* at p. 249.) The statement is especially incorrect "as applied to claims against local public entities that are not governed by specific tax refund statutes." (*Oronoz*, *supra*, at p. 365, fn. 9.)

The Court of Appeal here determined that the applicable claims statute in the present case is Government Code section 910. Ardon asserts that section 910 claims against government entities are to be presented by the claimant or by a person acting on his or her behalf and that, as noted above, in *City of San Jose* this court held that the word "claimant" in section 910 must be equated with the class itself and therefore permits the filing of class claims. Ardon also claims that the Court of Appeal improperly extended the reach of article XIII, section 32 of the California Constitution "beyond state entities and their agents to a local government."

By contrast, the City asserts that equating the term "claimant" with "the class itself" is inconsistent with the strict compliance standard set forth in *Woosley*, *supra*, 3 Cal.4th 758, for tax refund claims. But, as Ardon observes, *Woosley* does not require strict compliance with claims statutes in tax refund cases. The case requires that a court analyze the claims statutes before it to determine whether the Legislature intended to allow class claims under those statutes. Here, as *City of San Jose*, *supra*, 12 Cal.3d 447, held, a class claim by taxpayers for a tax refund against a local governmental entity is

8

permissible under section 910 in the absence of a specific tax refund procedure set forth in an applicable governing claims statute. Contrary to the City's argument, *Woosley* simply does not apply here because section 910 allows the class claim.

Our conclusion recognizes the limitations of both *City of San Jose* and *Woosley* in addressing the availability of class claims for the tax refunds in this case. *City of San Jose* simply held that section 910 does not preclude class claims against government entities. (*City of San Jose*, *supra*, 12 Cal.3d at pp. 456-457.) The action there did not involve a challenge to a local tax, but instead asserted nuisance and inverse condemnation claims. (*Ibid.*) All that *Woosley* demands is that a court first examine the claims statutes at issue in a claim for a taxpayer refund to determine whether the Legislature contemplated a class claim under the applicable California code. (*Woosley*, *supra*, 3 Cal.4th at pp. 790-792.) The court did not analyze the applicability of section 910, and, in contrast to the City's contention, there is no reason to construe section 910 in light of *Woosley*. As we have discussed, the relevant governing claims statute here is section 910. In contrast to the two statutes at issue in *Woosley,* section 910 states specifically that a "claim shall be presented by the claimant or by a person acting on his or her behalf." While the Act contains an exemption for "[c]laims under the Revenue and Taxation Code or other *statute* prescribing procedures for the refund . . . of any tax," the claim here did not involve any applicable municipal code or statute governing claims for refunds. (Gov. Code, § 905, subd. (a), italics added.) *City of San Jose* held that class claims are permitted under section 910. (*City of San Jose*, *supra*, 159 Cal.App.4th at p. 367.) Therefore, class claims for taxpayer refunds against local governmental entities brought under section 910 are also permitted in California.

In addition, the City contends that article XIII, section 32 of the California Constitution mandates that the Legislature must expressly authorize actions for tax refunds, and section 910 does not expressly authorize class claims. Article XIII, section 32 of the California Constitution states, "No legal or equitable process shall issue in any proceeding in any court against this State or any officer thereof to prevent or enjoin the

collection of any tax. After payment of a tax claimed to be illegal, an action may be maintained to recover the tax paid, with interest, in such manner as may be provided by the Legislature." Despite the first sentence's reference to tax actions against the state, the City asks us to read the second sentence of article XIII, section 32 to also preclude tax actions against local governments in the absence of express legislative authorization. But even assuming article XIII, section 32 is equally applicable to tax actions against local governments, we have already determined that section 910 provides the necessary legislative authorization for class claims of taxpayer refunds against local governmental entities. Indeed, there is nothing in the constitutional provision that would preclude the present action.

The City further asserts that the public policy underlying article XIII, section 32 precludes the present action. In *Woosley,* we held that article XIII, section 32 "rests on the premise that strict legislative control over the manner in which tax refunds may be sought is necessary so that governmental entities may engage in fiscal planning based on expected tax revenues. [Citation.]" (*Woosley*, *supra*, 3 Cal.4th at p. 789.) The City argues that this policy is thwarted where the local government is faced with a potentially huge liability in the form of a class action. But article XIII, section 32 simply prohibits courts from "prevent[ing] or enjoin[ing] the collection of any tax" *during the pendency of litigation challenging the tax*. (Cal. Const., art. XIII, § 32.) In fact, article XIII, section 32 does not purport to limit a court's authority to fashion a remedy if it determines a tax is illegal, including its authority to issue an injunction against further collection of the challenged tax. As Ardon observes, we have held that the important public policy behind article XIII, section 32 " 'is to allow revenue collection to continue during litigation so that essential public services dependent on the funds are not unnecessarily interrupted.' " (*State Bd. of Equalization v. Superior Court* (1985) 39 Cal.3d 633, 638, quoting *Pacific Gas & Electric Co. v. State Bd. of Equalization* (1980) 27 Cal.3d 277, 283.) This policy is intended to ensure the uninterrupted flow of tax revenue, so that refunds that are authorized must be processed in orderly procedures that the Legislature allows. That

10

policy favoring fiscal responsibility, however, does not justify precluding legitimate class proceedings for the refund of allegedly illegal taxes, and is indeed satisfied here because section 910 allows the present taxpayer class claim.

## CONCLUSION

*Woosley*, *supra*, 3 Cal.4th 758, does not apply to a potential taxpayer class claim brought under section 910.  In addition, neither the explicit language nor the policy underlying article XIII, section 32 applies to prevent the present action.  *City of San Jose*, *supra*, 12 Cal.3d 447, is entirely consistent with our conclusion here.  Class claims for tax refunds against a local governmental entity are permissible under section 910 in the absence of a specific tax refund procedure set forth in an applicable governing claims statute.  Consequently, we reverse the Court of Appeal judgment, and remand the matter for further proceedings consistent with our opinion.

CHIN, J.

WE CONCUR:

CANTIL-SAKAUYE, C. J.
KENNARD, J.
BAXTER, J.
WERDEGAR, J.
CORRIGAN, J.
JACKSON, J.*

_____
\* Associate Justice of the Court of Appeal, Second Appellate District, Division Seven, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See last page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Ardon v. City of Los Angeles
_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 174 Cal.App.4th 369
**Rehearing Granted**

_____

**Opinion No.** S174507
**Date Filed:** July 25, 2011

_____

**Court:** Superior
**County:** Los Angeles
**Judge:** Anthony J. Mohr

_____

**Counsel:**

Wolf Haldenstein Adler Freeman & Herz, Francis M. Gregorek, Rachele R. Rickert; Cuneo Gilbert & LaDuca, Jon Tostrud; Chimicles & Tikellis, Nicholas E. Chimicles and Timothy N. Mathews for Plaintiff and Appellant.

Wolf, Haldenstein Adler Freeman & Herz, Francis M. Gregorek, Rachele R. Rickert; Cuneo Gilbert & LaDuca, Jon Tostrud; Chimicles & Tikellis and Timothy N. Mathews for Willy Granados and Jon W. McWilliams as Amici Curiae on behalf of Plaintiff and Appellant.

Patricia Sturdevant; Wilentz, Goldman & Spitzer, Kevin P. Roddy; and Timothy Bittle for NASCAT, Howard Jarvis Taxpayers Association, Consumer Federation of California and Utility Reform Network as Amici Curiae on behalf of Plaintiff and Appellant.

Patricia Sturdevant; Richard Holober; Shepherd, Finkelman, Miller & Shah, Patrick A. Klingman; Huskinson, Brown, Heidenreich & Carlin and Paul E. Heidenreich for Consumer Action, Consumer Federation of California and NASCAT as Amici Curiae on behalf of Plaintiff and Appellant.

Edward M. Teyssier; and Joseph D. Henchman for the Tax Foundation as Amicus Curiae on behalf of Plaintiff and Appellant.

Alan M. Mansfield for Utility Consumers' Action Network as Amicus Curiae on behalf of Plaintiff and Appellant.

Rockard J. Delgadillo and Carmen Trutanich, City Attorneys, Noreen S. Vincent and Michael Nagle, Assistant City Attorneys, Brian I. Cheng, Deputy City Attorney; Orrick Herrington & Sutcliffe, William Molinski, Valerie M. Goo and Frank D. Rorie; Colantuono & Levin, Michael G. Colantuono, Sandra J. Levin, Amy C. Sparrow and Erwin M. Benedicto for Defendant Respondent.

Dennis J. Herrera, City Attorney (San Francisco), Julie Van Nostern, Chief Tax Attorney, and Peter J. Keith, Deputy City Attorney, for The League of California Cities, The California State Association of Counties and The California Special Districts Association as Amici Curiae on behalf of Defendant and Respondent.

Raymond G. Fortner, Jr., County Counsel (Los Angeles) and Albert Ramseyer, Principal Deputy County Counsel, for the County of Los Angeles as Amicus Curiae on behalf of Defendant and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Francis M. Gregorek
Wolf Haldenstein Adler Freeman & Herz
750 B Street, Suite 2770
San Diego, CA  92101
(619) 239-4599

Sandra J. Levin
Colantuono & Levin
300 South Grand Avenue, Suite 2700
Los Angeles, CA  90071
(213) 542-5700