Filed 6/25/14  Pershadsingh v. County of Los Angeles CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| RAJENDRA PERSHADSINGH, | B247727 |
| Plaintiff and Appellant, | |
| v. | (Los Angeles County Super. Ct. No. BC456526) |
| THE COUNTY OF LOS ANGELES, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Elihu M. Berle, Judge.  Affirmed.

Huskinson, Brown & Heidenreich, David W.T. Brown and Paul E. Heidenreich for Plaintiff and Appellant.

Nossaman, Lloyd W. Pellman, Winfield D. Wilson and Stephen P. Wiman for Defendant and Respondent.

In 1991, the County of Los Angeles (County) implemented a 2 percent increase in the Transient Occupancy Tax (tax) applicable to hotel stays in the County. After a one-night hotel stay for which he was billed for the tax, appellant Rajendra Pershadsingh, in his own name and on behalf of similarly situated payers of the tax, filed a claim for a refund and damages with the County under Government Code section 910 (a provision of the Government Claims Act; Gov. Code, § 900 et seq.)[1], on the ground that the 1991 increase violated the voter approval requirements of Proposition 62, because the increase was passed by the Board of Supervisors and not submitted to the electorate.[2] After the County denied the claim, appellant filed a putative class action challenging the 1991 increase and moved for class certification. However, although appellant made his section 910 claim with the County using his name alone, the evidence disclosed that appellant's closely held corporation, not appellant, actually paid the tax. Therefore, the trial court ruled appellant had no standing to challenge the 1991 increase and denied class certification on the ground that appellant could not adequately represent the proposed class. Appellant then moved to amend the

_____

[1]    All further statutory references are to the Government Code unless otherwise specified.

[2]    "In 1986, California voters approved Proposition 62, which added sections 53720 through 53730 to the Government Code. . . . [¶] The voter approval requirements are set forth in Government Code sections 53722 and 53723. Section 53722 provides that a local government or district may not impose 'any special tax unless and until such special tax is submitted to the electorate of the local government, or district and approved by a two-thirds vote of the voters voting in an election on the issue.' Section 53723 provides that '[n]o local government, or district, whether or not authorized to levy a property tax, may impose any general tax unless and until such general tax is submitted to the electorate of the local government, or district and approved by a majority vote of the voters voting in an election on the issue.'" (*Neilson v. City of California City* (2005) 133 Cal.App.4th 1296, 1306-1307, italics deleted.)

2

complaint to name his closely held corporation as class representative. But the corporation never submitted a claim for a refund with the County, and therefore, it, too, lacked standing to challenge the tax. Thus, the trial court denied the motion to amend. The parties stipulated to entry of judgment in favor of the County in order to facilitate this appeal. On appeal, appellant contends that the court erred in denying his motion to amend. We disagree and therefore affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The tax on hotel stays was initially imposed in 1964. (L.A. County Code, § 4.72.010.) In December 1990, the County increased the tax from 10 percent to 12 percent, effective January 18, 1991. (L.A. County Ord. No. 90-0180, § 1 (1990); L.A. County Code, § 4.72.040.) It is this 1991 increase that is the basis of appellant's putative class action, on the ground that it violates the voter approval provisions of Proposition 62.[3]

On December 15, 2010, appellant spent one night at the Ritz Carlton Hotel in Marina del Rey. The total bill was $380.35, including the tax of $34.08. In paying the bill, appellant used a debit card for the account belonging to Realty Dynamic Inc. (Realty), a subchapter S corporation of which appellant is the Chief Executive Officer, Secretary, Chief Financial Officer and the only director.

Realty never submitted a claim with the County regarding payment of the tax or an application for leave to file a late claim. Rather, on January 10, 2011,

---

[3] In June 2012, a ballot proposition passed by the voters ratified the 12 percent tax retroactively. (L.A. County Ord. No. 2012-0041, § 1 (2012), found at http://file.lacounty.gov/bos/supdocs/71815.pdf.) Although the parties argue extensively as to whether the retroactive approval by the voters vitiates appellant's challenge to the tax on the merits and renders the appeal moot, we need not decide the issue because, as we discuss below, we resolve the appeal on different grounds.

appellant, through counsel, sent a letter to the Los Angeles County Board of Supervisors, asserting a claim in appellant's name alone, as an individual and on behalf of similarly situated taxpayers, seeking damages and a refund of the amount of the tax reflecting the 1991 increase. The letter stated that appellant "was billed" for the tax and that the portion related to the 1991 increase was "illegally and improperly collected." But the letter did not state that appellant himself paid the bill, including the tax.[4] The County responded in a January 27, 2011 letter, denying the claim on the ground, in substance, that each purported class member was required to file an individual claim by section 910 and Los Angeles County Code sections 4.72.310 and 4.72.340.[5] Appellant was directed to consult sections

---

[4] The letter stated: "While staying at the Ritz Carlton Hotel [on the specified date], he [appellant] was billed for the County's Transient Occupancy Tax at a rate of 12% of the entire bill, for a total of $34.08. It is believed that 3 (three) percentage [*sic*] of this bill was therefore illegally and improperly collected because that is the portion . . . that was increased after Proposition 62 was enacted."

[5] The County's denial letter stated that "[t]he claim is insufficient for the following reasons: [¶] 1. The claim fails to name each and every taxpayer for whom the claim is filed. [¶] 2. A claim is required to be filed by each separate claimant. [¶] 3. Each claim is required to be signed and verified by each claimant. [¶] 4. Each claim must include the name and post office address of each separate claimant. [¶] 5. Each claim must state the amount of the refund claimed as of the date of the presentation of the claim."

We note that under *McWilliams v. City of Long Beach* (2013) 56 Cal.4th 613 (*McWilliams*), decided after the trial court's denial of appellant's motion to amend in November 2012, the County's grounds for denial of the claim were invalid. *McWilliams* interpreted the Supreme Court's earlier decision in *Ardon v. City of Los Angeles* (2011) 52 Cal.4th 241, 251 (*Ardon*), which authorized class claims against local governments for a refund of a tax under the Government Claims Act, absent a specific refund procedure that bars class claims "in an applicable governing claims *statute*." (Italics added.) *McWilliams* held that a municipal ordinance setting forth a claims procedure that bars class claims for a tax refund is not a "statute" within the meaning of the Government Code, and therefore the general claims procedures of section 910, which permits class claims, governs. (*McWilliams*, *supra*, 56 Cal.4th at pp. 616-618, 629.) Under *McWilliams*, in denying appellant's claim, the County improperly relied on its ordinance

4

910, 910.2, 910.4, 910.8, and Los Angeles County Code sections 4.72.310 and 4.72.340, and then resubmit his claim within 15 calendar days.

Appellant did not resubmit or amend his claim. By letter dated February 23, 2011, the County informed appellant that his purported claim had been rejected on February 14, 2011, because he failed to provide the County with the requested information. On March 4, 2011, appellant filed suit against the County, challenging the 1991 increase on the ground that, as here relevant, it violated Proposition 62.[6] He later moved for class certification in December 2011.[7] The court held several hearings on the class certification motion, continuing the hearing in order to allow appellant to present evidence that he actually paid the tax. On October 3, 2012, the court denied appellant's motion for class certification on the basis that appellant did not have standing because he did not pay the tax himself and therefore could not adequately represent the putative class. The denial was

that purports to require each claimant to file an individual claim for a tax refund. However, the invalidity of the grounds on which County denied appellant's claim does not affect our resolution of this appeal.

[6] Appellant initially alleged the following causes of action on behalf of himself and a purported class of other persons similarly situated: (1) violation of Proposition 62; (2) deprivation of due process under federal law; (3) violation of the federal takings clause; (4) conversion; and (5) declaratory relief. The County demurred to all the causes of action. The trial court sustained the demurrer without leave to amend as to all except the first cause of action, a violation of Proposition 62, as to which it overruled the demurrer. Appellant indicated that he would proceed on the first cause of action and would not seek leave to amend the complaint as to the other causes of action. The County answered the complaint, denying the allegations and asserting numerous affirmative defenses.

[7] He also moved for summary adjudication. The court deferred that motion pending a ruling on class certification.

without prejudice to allow appellant to amend his complaint to name an adequate class representative.

Appellant moved to amend the complaint, proposing to add Realty as an additional named plaintiff.  The trial court denied the motion to amend, reasoning that Realty had not filed a claim for a refund with the County.  The court rejected appellant's arguments that Realty could simply step into appellant's shoes or that a claim filed by a putative class representative who did not have standing (appellant) was sufficient to represent the class members.

The parties stipulated to entry of judgment against appellant and in favor of the County in order to facilitate an appeal.  (See *Harrington-Wisely v. State of California* (2007) 156 Cal.App.4th 1488, 1495 [although a stipulated judgment generally is not appealable, an appeal is permitted ""'"[i]f consent was merely given to facilitate an appeal following adverse determination of a critical issue"'"'".)  The court entered judgment against appellant and in favor of the County, ordered that appellant take nothing by his complaint, and dismissed the action in its entirety with prejudice, awarding costs to the County.  Appellant filed a notice of appeal.

## DISCUSSION

Appellant contends that the trial court erred in denying his motion to amend his complaint to add Realty as the class plaintiff.  We conclude that the trial court correctly found that appellant did not have standing to challenge the tax because he did not pay it, and that Realty did not have standing because it did not file a claim as required by the Act.  We therefore affirm the court's denial of appellant's motion to amend the complaint.

We review the trial court's ruling on a motion to amend a pleading for an abuse of discretion.  (*Emerald Bay Community Assn. v. Golden Eagle Ins. Corp.*

6

(2005) 130 Cal.App.4th 1078, 1097.) However, "'[s]tanding is a question of law that we review de novo.' [Citation.]" (*Marler v. E.M. Johansing, LLC* (2011) 199 Cal.App.4th 1450, 1467.)

As a claim for money or damages against a government entity, appellant's claim challenging the tax required compliance with the Government Claims Act (§ 810 et seq.). "According to the Act, 'all claims for money or damages against local public entities' are to be presented 'in accordance with Chapter 1 (commencing with Section 900) and Chapter 2 (commencing with Section 910),' except as provided in section 905. (§ 905.) One of the exceptions in section 905 is for '[c]laims under the Revenue and Taxation Code or other statute prescribing procedures for the refund . . . of any tax . . . or any portion thereof . . . .' (§ 905, subd. (a).) When a claim is excepted from the Act by section 905 and is 'not governed by any other statutes or regulations expressly relating thereto,' the claim 'shall be governed by the procedure prescribed in any charter, ordinance or regulation adopted by the local public entity.' (§ 935, subd. (a).)" (*McWilliams*, *supra*, 56 Cal.4th at p. 619.)

In the instant case, Los Angeles County Code section 4.72.340 provides that "[a] transient or other guest of a hotel may obtain a refund of taxes overpaid or paid more than once or erroneously or illegally collected or received by the county by filing a claim in the manner provided in Section 4.72.310, if the tax was paid by the transient or other guest directly to the tax collector, or if the transient or other guest has paid the tax to the operator, and establishes to the satisfaction of the tax collector that the transient or other guest has been unable to obtain a refund from the operator who collected the tax."[8] As for the procedural requirement of a claim,

---

[8] Los Angeles County Code section 4.72.310 states: "Whenever the amount of any tax, interest or penalty has been overpaid or paid more than once or has been erroneously

7

section 910 controls.  (See Los Angeles County Code, § 4.04.020 [a claim against the County for money or damages may not be brought unless a claim that satisfies section 910 has been submitted and denied][9]; *McWilliams*, *supra*, 56 Cal.4th at p. 616 [the general procedure for the presentation of claims for money or damages against a local government entity is prescribed by the Government Claims Act]; *Ardon*, *supra*, 52 Cal.4th at p. 247 ["Section 910 does not specifically apply to tax refunds, but to all claims against governmental entities"].)[10]

---

or illegally collected or received by the county under this chapter, the operator so paying may have such amount applied to subsequent taxes due, or it may be refunded as provided in Sections 4.72.310 through 4.72.350 of this chapter if, within three years after the date of payment, the operator files with the tax collector in writing a claim therefor. In such claim the operator shall state, under penalty of perjury, the specific grounds and specific facts upon which the claim is founded. The claims shall be on forms furnished by the tax collector."

[9]      Los Angeles County Code section 4.04.020 provides:  "No suit for money, damages, or tax refunds may be brought against the county on a cause of action for which this chapter requires a claim to be presented until a written claim therefor has been filed and acted upon in conformity with this chapter and Sections 945.4 and 945.6 of the Government Code."  "[Section] 945.4 simply states that no action may be commenced against a public entity unless a claim that satisfies [section] 910 [citation] has been submitted and denied."  (3 Witkin, Cal. Procedure (5th ed. 2008) Actions, § 254, p. 337.)

[10]      Section 910 provides:  "A claim shall be presented by the claimant or by a person acting on his or her behalf and shall show all of the following:  [¶]  (a)  The name and post office address of the claimant.  [¶]  (b)  The post office address to which the person presenting the claim desires notices to be sent.  [¶]  (c)  The date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted.  [¶] (d)  A general description of the indebtedness, obligation, injury, damage or loss incurred so far as it may be known at the time of presentation of the claim.  [¶]  (e)  The name or names of the public employee or employees causing the injury, damage, or loss, if known.  [¶]  (f)  The amount claimed if it totals less than ten thousand dollars ($10,000) as of the date of presentation of the claim, including the estimated amount of any prospective injury, damage, or loss, insofar as it may be known at the time of the presentation of the claim, together with the basis of computation of the amount claimed. If the amount claimed exceeds ten thousand dollars ($10,000), no dollar amount shall be

8

Compliance with the Government Claims Act is a mandatory requirement before filing suit. "'The failure to timely present a claim to the public entity bars the claimant from filing a lawsuit against that public entity. [Citation.] Moreover, because the purpose of the claim is not "to prevent surprise [but rather] is to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation . . . [citations][,] . . . [i]t is well-settled that claims statutes must be satisfied even in face of the public entity's actual knowledge of the circumstances surrounding the claim. . . ." [Citation.]' [Citation.]" (*J.J. v. County of San Diego* (2014) 223 Cal.App.4th 1214, 1219 (*J.J.*).)

In the present case, appellant attempted to comply with the claims statute by making a personal claim against the County for a refund of the tax. But the undisputed evidence shows that he did not pay the tax. Rather, he used a debit card for an account belonging to Realty. Having not suffered any injury or violation of his legally protected interests, appellant lacks personal standing to bring a court action for a refund of the tax. (See *Sipple v. City of Hayward* (2014) 225 Cal.App.4th 349, 359 [standing requires that a party have an interest that is "'concrete and actual,'" not "'conjectural or hypothetical'"]; *Great Lakes Construction, Inc. v. Burman* (2010) 186 Cal.App.4th 1347, 1356 ["Standing generally requires that the plaintiff be able to allege injury, that is, an invasion of a legally protected interest."].) Because he cannot seek a refund of the tax, he is not an appropriate class representative. "Whether the issue is framed as one of standing to prosecute a refund action or as one authorizing recovery in the action, the effect is the same: Only those persons who paid the disputed tax may recover

included in the claim. However, it shall indicate whether the claim would be a limited civil case."

9

their excess payments in a refund action.  [Citations.]" (*Parmar v. Board of Equalization* (2011) 196 Cal.App.4th 705, 716.)

Conceding that Realty, not he, paid the tax, appellant contends that Realty is an appropriate class representative, and that he should have been allowed to amend to name Realty as a plaintiff.  But Realty never filed a claim with the County, and therefore it cannot bring a court action for a refund of the tax.  (*J.J., supra,* 223 Cal.App.4th at p. 1219.)  Appellant's various arguments to the contrary are not persuasive.

Appellant relies on a series of decisions relevant to the viability of class actions when, as in the instant case, the claim requirements of section 910 govern.  (See *Ardon, supra,* 52 Cal.4th at pp. 247-251, discussing, among others, *City of San Jose v. Superior Court* (1974) 12 Cal.3d 447 (*San Jose*), *Woosley v. State of California* (1992) 3 Cal.4th 758, and *County of Los Angeles v. Superior Court* (*Oronoz*) (2008) 159 Cal.App.4th 353; see also *McWilliams, supra,* 56 Cal.4th at p. 619.)  As here applicable, the thread of this line of decisions is that a representative plaintiff can file a claim on behalf of a class under section 910; each class member need not file an individual claim.  The sufficiency of a such a class claim under section 910 is judged by a two-part test:  "Is there *some* compliance with *all* of the statutory requirements; and, if so, is this compliance sufficient to constitute *substantial* compliance?"  (*San Jose, supra,* 12 Cal.3d at pp. 456-457.)  As to the "some compliance" prong, "the class claim must provide the name, address, and other specified information concerning the *representative plaintiff* and then sufficient information to identify and make ascertainable the class itself."  (*Id.* at p. 457, italics added.)  As to the "substantial compliance" prong, the adequacy of the identifying information must be judged by whether it states enough information "to reasonably enable the public entity to make an adequate investigation of the merits

10

of the claim and to settle it without the expense of a lawsuit." (*Id*. at p. 456; see *Ardon, supra,* 52 Cal.4th at p. 248.)

Here, appellant's personal claim did not satisfy the "some compliance" prong for him as an individual, because he is not a representative plaintiff, in that he did not pay the tax. It also cannot satisfy the "some compliance" prong as a purported claim on behalf of Realty, because it fails to identify Realty.

Further, it cannot meet the "substantial compliance" prong on behalf of Realty. Appellant's claim stated that appellant, not Realty, "was billed" for the tax. It stated that the portion relating to the 1991 increase was collected illegally, but it did not state that Realty – or anyone else, for that matter – actually paid the tax. To the contrary, on its face, the claim was phrased in such a manner as to suggest, without expressly stating, that appellant personally paid the tax. In short, appellant's claim can only be construed as a claim on his personal behalf. Realty never filed a claim, and "'[s]ubstantial compliance cannot be predicated upon no compliance.' [Citations.]" (*San Jose*, *supra*, 12 Cal.3d at p. 456; see *California Restaurant Management Systems v. City of San Diego* (2011) 195 Cal.App.4th 1581, 1597 ["[A] plaintiff must ordinarily file his or her own claim and may not sue to recover for his or her own injury in reliance on a claim filed by another injured party, even if the plaintiff's injury was caused by the same transaction that injured the other party."].)

Appellant contends that given Realty's status as a subchapter S corporation, his personal claim was sufficient to constitute a claim by Realty because Realty's expenses flow from the corporation to him, and that, as the "representative" of Realty, he has the legal right to file the claim as Realty's representative. We disagree.

11

"S corporations . . . give small businesses the benefits of the corporate form, such as limited liability for shareholders, without the disadvantages of corporate taxation. [Citations.]" (*Durando v. U.S.* (9th Cir. 1995) 70 F.3d 548, 551.) The subchapter S corporate form does not permit an individual shareholder to ignore the corporation's existence and assert claims in the shareholder's name that actually belong to the corporation. Appellant relies on general principles of S corporations to argue that Realty's expenses "flow from the corporation to the owner." However, in his numerous filings in the trial court seeking to add Realty as a plaintiff, appellant never presented evidence regarding Realty's income or expenses.[11] Indeed, he never raised the subchapter S argument at all. "Factual matters that are not part of the appellate record will not be considered on appeal and such matters should not be referred to in the briefs. [Citations.]" (*Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 102.)

Nor does the alter ego doctrine support appellant's contention. That doctrine applies "'when a plaintiff comes into court claiming that an opposing party is using the corporate form unjustly and in derogation of the plaintiff's interests. [Citation.]' [Citation.]" (*Grotenhuis v. County of Santa Barbara* (2010) 182 Cal.App.4th 1158, 1164 (*Grotenhuis*).) It does not apply to permit a shareholder to pierce the corporate veil so as to assert a personal claim when the corporation, which has a separate existence, is injured. (See *Postal Instant Press, Inc. v. Kaswa Corp.* (2008) 162 Cal.App.4th 1510, 1518 ["The alter ego doctrine traditionally is applied to pierce the corporate veil so that a shareholder may be held liable for the debts or conduct of the corporation."]; *Leek v. Cooper* (2011) 194 Cal.App.4th

---

[11] These filings include his Notice of Motion to Add New Plaintiff, Reply Brief re Class Action Issues, Brief Regarding Class Action Issues, and Reply to Opposition to Motion for Class Certification.

399, 406 ["The essence of the alter ego doctrine is not that the individual shareholder becomes the corporation, but that the individual shareholder is liable for the actions of the corporation. [Citation.]" .)

We find *Grotenhuis*, on which the trial court relied, instructive. There, the plaintiff attempted to claim a homeowner's property tax exemption and transfer the base year value of a former residence to a new residence, even though a closely held corporation was the owner of record of both residences. The court of appeal held that the trial court erred in using an alter ego theory to confer standing on the plaintiff so as to permit him to claim the tax exemption. (*Grotenhuis, supra*, 182 Cal.App.4th at p. 1164.) The appellate court reasoned that the plaintiff "elected the corporate form for business reasons unrelated to tax. 'He who takes the benefit must bear the burden.' (Civ. Code, § 3521.) [Plaintiff] should not be able to weave in and out of corporate status when it suits the business objective of the day." (*Ibid.*)

As in *Grotenhuis*, in the present case, appellant "has come to court claiming that the very corporation he formed should have its veil pierced so that he, as an individual, can obtain a tax advantage. 'The essence of the alter ego doctrine is that justice be done.' [Citation.] There is no injustice here." (*Grotenhuis*, *supra*, 182 Cal.App.4th at p. 1164.)

For the foregoing reasons, the trial court properly denied the motion to amend.[12]

---

[12] Because we resolve the appeal on this ground, we need not address the other arguments raised by the parties.

13

**DISPOSITION**

The judgment is affirmed.  The County shall recover its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, J.


We concur:


EPSTEIN, P. J.


MANELLA, J.


14